No. 23-10872

# In the United States Court of Appeals
# for the Eleventh Circuit

---

RENÉ GARCIA, ET AL.,

*Plaintiffs–Appellees,*

v.

EXECUTIVE DIRECTOR, FLORIDA COMMISSION ON ETHICS, ET AL.,

*Defendants–Appellants.*

---

**MOTION FOR STAY PENDING APPEAL**

---

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:22-CV-24156-BB

---

ASHLEY MOODY
*Attorney General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 414-2672 (fax)
*henry.whitaker@myfloridalegal.com*

HENRY WHITAKER
*Solicitor General*
DANIEL BELL
*Chief Deputy Solicitor General*
EVAN EZRAY
*Deputy Solicitor General*
ALISON E. PRESTON
*Assistant Solicitor General*

*René Garcia, et al. v. Executive Director, Florida Commission on Ethics, et al.*
*Eleventh Circuit Case No. 23-10872*

Counsel for Appellants certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1–26.3 and 27-1(a)(9):

1.      Anchors, Michelle, in her Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

2.      Bell, Daniel, *Attorney for Appellants*

3.      Bernard, Mack, *Plaintiff-Appellee*

4.      Bloom, Beth, *U.S. District Court Judge for the Southern District of Florida*

5.      Book, Ronald, *Attorney for Plaintiffs*

6.      Brodeen, Karen Ann, *Attorney for Defendants*

7.      Cervone, William P., in his Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

8.      Coffey, Kendall, *Attorney for Plaintiffs*

9.      Ezray, Evan, *Attorney for Appellants*

10.     Fernández, Javier, *Plaintiff-Appellee*

11.     Fernandez, Robert Henry, *Attorney for Plaintiffs*

12.     Florida Commission on Ethics

13.     Florida Office of the Attorney General

14.     Gaetz, Don, in his Official Capacity as Vice Chairman on the Florida Commission on Ethics, *Defendant-Appellant*

*René Garcia, et al. v. Executive Director, Florida Commission on Ethics, et al.*
*Eleventh Circuit Case No. 23-10872*

15.    Garcia, René, *Plaintiff-Appellee*

16.    Grant, John, in his Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

17.    Gilzean, Jr., Glenton ("Glen"), in his Official Capacity as Chairman on the Florida Commission on Ethics, *Defendant-Appellant*

18.    Hiaasen, Scott, *Attorney for Plaintiffs*

19.    Kuehne, Benedict, *Attorney for Plaintiffs-Appellees*

20.    Meggs, William N., in his Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

21.    Moody, Ashley, in her Official Capacity as Attorney General of the State of Florida, *Defendant-Appellant*

22.    Moore, Ed H., in his Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

23.    Newton, Sr., Wengay M., in his Official Capacity as Commissioner on the Florida Commission on Ethics, *Defendant-Appellant*

24.    Patronis, Jimmy, in his Official Capacity as Chief Financial Officer of the State of Florida, *Defendant-Appellant*

25.    Preston, Alison E., *Attorney for Defendants-Appellants*

26.    Proctor, William, *Plaintiff-Appellee*

27.    Sjostrom, Noah, *Attorney for Defendants*

28.    Stillman, Kerrie J., in her Official Capacity as Executive Director of the

*René Garcia, et al. v. Executive Director, Florida Commission on Ethics, et al.*
*Eleventh Circuit Case No. 23-10872*

Florida Commission on Ethics, *Defendant-Appellant*

    29.    Teegen, Elizabeth, *Attorney for Defendants*

    30.    Wagar, Crystal, *Plaintiff terminated 02/14/2023*

    31.    Waldman, Jim, in his Official Capacity as Commissioner on the Florida

Commission on Ethics, *Defendant-Appellant*

    32.    Whitaker, Henry, *Attorney for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 2

ARGUMENT............................................................................................. 4

A.    Defendants are likely to succeed in narrowing the scope of the injunction........ 5

    1.    The district court lacked the power to issue a universal injunction. ......... 5

    2.    Even if the district court had the power to issue a universal injunction, it abused its discretion by issuing one here. ............................................... 14

B.    The remaining stay factors favor Defendants. .................................... 16

CONCLUSION ........................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ................................................................................ 2

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ........................................................................................... 10

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ........................................................................................... 15

*CASA de Maryland, Inc. v. Trump*,
  971 F.3d 220 (4th Cir. 2020) ........................................................................ 7, 14

*Cohen v. California*,
  403 U.S. 15 (1971) ............................................................................................. 12

*Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*,
  950 F.3d 790 (11th Cir. 2020) ........................................................................... 14

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020) ......................................................................................... 16

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ........................................................................................... 13

*Feds for Med. Freedom v. Biden*,
  25 F.4th 354 (5th Cir. 2022) .............................................................................. 16

*Florida v. Dep't of Health & Human Servs. (HHS)*,
  19 F.4th 1271 (11th Cir. 2021) .......................................................................... 14

*Georgia v. President of the United States*,
  46 F.4th 1283 (11th Cir. 2022) .................................................................... passim

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................................. 6

*Hand v. Scott*,
    888 F.3d 1206 (11th Cir. 2018) ....................................................................... 4

*Hedges v. Obama*,
    12-cv-331, 2012 WL 2044565 (S.D.N.Y. June 6, 2012) .............................. 11

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ..................................................................... 10

*Keener v. Convergys Corp.*,
    342 F.3d 1264 (11th Cir. 2003) ....................................................................... 6

*Kentucky v. Biden*,
    57 F.4th 545 (6th Cir. 2023) ......................................................................... 15

*L.A. Police Dept. v. United Reporting Pub. Corp.*,
    528 U.S. 32 (1999) ........................................................................................ 11

*Maryland v. King*,
    567 U.S. 1301 (2012) .................................................................................... 16

*McKenzie v. City of Chicago*,
    118 F.3d 552 (7th Cir. 1997) ........................................................................... 6

*McKusick v. City of Melbourne*,
    96 F.3d 478 (11th Cir. 1996) ........................................................................... 6

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ......................................................................................... 7

*New Georgia Project v. Raffensperger*,
    976 F.3d 1278 (11th Cir. 2020) ..................................................................... 14

*People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*,
    60 F.4th 815 (4th Cir. 2023) ......................................................................... 13

*Rodgers v. Bryant*,
    942 F.3d 451 (8th Cir. 2019) ................................................................... 7, 8, 9

*Scott v. Donald*,
    165 U.S. 107 (1897) ..................................................................................... 8, 9

*Scott v. Donald*,
    165 U.S. 58 (1897) ........................................................................................... 8

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) ........................................................................ 16

*Thornhill v. Alabama*,
    310 U.S. 88 (1940) ............................................................................................ 12

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ............................................................................5, 6, 8, 9

*U.S. Dep't of Def. v. Meinhold*,
    510 U.S. 939 (1993) ............................................................................................ 5

*United States v. Nat'l Treasury Emps. Union (NTEU)*,
    513 U.S. 454 (1995) .......................................................................................... 11

*United States v. Stevens*,
    559 U.S. 460 (2010) .......................................................................................... 12

*United States v. Stevens*,
    533 F.3d 218 (3d Cir. 2008) (en banc) .......................................................... 13

*United States v. Williams*,
    553 U.S. 285 (2008) .......................................................................................... 10

*Zepeda v. U.S. Immig. & Naturalization Serv.*,
    753 F.2d 719 (9th Cir. 1983) ............................................................................ 6

## Constitutional & Statutory Provisions

Fla. Const. art. II, § 8(f) ............................................................................... 1, 2, 3

Fla. Stat. § 112.3121 ......................................................................................... 2, 3

Fla. Stat. § 112.3122 ............................................................................................. 2

5 U.S.C. § 706 ....................................................................................................... 6

## Rules

Fed. R. App. P. 8 ............................................................................................... 2, 4

**Other Authorities**

Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991)................ 13

Jonathan F. Mitchell, *The Writ-of-Erasure Falla*cy, 104 Va. L. Rev. 933 (2018)............. 10

Henry P. Monaghan*, Overbread*th, 1981 Sup. Ct. Rev. 1 (1982) .................................... 11

2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 875 (1836) ........................................................................................ 7

Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof, According to the Practice of the Courts of Equity, of England and America* § 72 (4th ed. 1848)...................... 7

## **INTRODUCTION**

This is a First Amendment challenge to Article II, Section 8(f) of the Florida Constitution and its implementing legislation, which are designed to prevent Florida public officials from monetizing their offices through serving as paid lobbyists during their time in public service. The district court ruled, however, that Plaintiffs have a First Amendment right both to be paid for lobbying and to serve as public officials, App. 87, and thus entered a universal preliminary injunction precluding the State from enforcing those restrictions against anyone, anywhere, App. 88. The district court did so even though only four plaintiffs are suing here—only two of whom the court concluded met the prerequisites to seeking injunctive relief, App. 73–77, and none of whom brought a class action.

The State disagrees with that ruling and has appealed it. The State does not, however, seek a stay pending appeal of the district court's injunction in its entirety. Instead, the State requests a stay only of the district court's decision to grant universal injunctive relief beyond the two plaintiffs who the district court concluded were entitled to an injunction.

The district court exceeded its equitable powers in entering an injunction of that breadth. District courts, unless given specific statutory power, only have equitable power to remedy party-specific injuries. And even if universal injunctions were sometimes valid, they certainly would be inappropriate where, as here, suit has been brought by four individual plaintiffs who claim injury based on alleged fears that the

1

State will enforce the restrictions against them—injuries that could be fully remedied by a party-specific injunction. In entering broader relief, the district court irreparably harmed the State by ordering it to refrain from enforcing a duly enacted law designed to combat public corruption.

Defendants moved first in the district court for a partial stay on March 16, 2023. App. 91–95; Fed. R. App. P. 8(a)(1)–(2). Plaintiffs responded two weeks later, on March 30, 2023. App. 99–106. The next day Defendants waived their reply and averred that because the State suffers irreparable harm "each day enforcement of their law remains enjoined as to anyone, anywhere, Defendants intend to proceed in the Circuit Court unless they receive a ruling on or before April 6, 2023." App. 110 (citation omitted). But the district court has failed to rule on the motion, so Defendants now move this Court for a partial stay. Fed. R. App. P. 8(a)(2)(A)(ii); *see Al Otro Lado v. Wolf*, 952 F.3d 999, 1005–06 & n.5 (9th Cir. 2020) (entertaining a stay motion "even though the district court ha[d] not yet ruled on it, because the [8-day] delay in the district court was sufficiently long to fall under Rule 8(a)(2)(A)(ii)"). This court should stay the injunction as to everyone except the two plaintiffs who the district court found had established standing and irreparable harm. Fed. R. App. P. 8.

## BACKGROUND

Florida restricts paid lobbying by "public officer[s]" when they are in, and after they leave, office. Fla. Const. art. II, § 8(f)(2), (3); Fla. Stat. §§ 112.3121–.3122. While in office, "[a] public officer shall not lobby for compensation on issues of policy,

2

appropriations, or procurement" before the federal and Florida governments. Fla. Const. art. II, § 8(f)(2); Fla. Stat. § 112.3121 (providing reticulated definitions for terms such as "lobby for compensation"). And for six years after office, a former public officer is similarly restricted, but then whether certain government bodies are off limits depends on what office was held. Fla. Const. art. II, § 8(f)(3). For example, a county commissioner is prohibited from lobbying only the county commission that he served on. Fla. Const. art. II, § 8(f)(3)c.

Plaintiffs are a mayor and three county commissioners[1]—public officers subject to the in-office lobbying restrictions—who want to "advocate" simultaneously for paying clients before government bodies. App. 73–76; Fla. Const. art. II, § 8(f)(1)–(2). Worried that the restrictions forbid such paid advocacy, Plaintiffs moved to preliminarily enjoin Defendants from enforcing the restrictions "against plaintiffs and others similarly situated." App. 23. Defendants opposed that motion on the merits. App. 46–64. But Defendants also argued that, to the extent the district court granted the motion, "it should fashion the narrowest remedy that will protect Plaintiffs from harm." App. 64. And "[h]ere," Defendants said, "that means at most preliminarily enjoining enforcement of the in-office restrictions against the Plaintiffs, not every

---

[1] The fifth plaintiff has since been dropped. App. 67 n.1.

public officer . . . in the state"; "[s]uch narrow relief will avoid burdening the state interest more than necessary to provide relief to Plaintiffs." App. 64.

To no avail. The district court "enjoin[ed] enforcement of the In-Office Restrictions altogether"—in other words, as to all public officers, not just as to Plaintiffs. App. 88. In the court's eyes, that universal injunction was justified by its conclusion that "the In-Office Restrictions are likely overbroad and facially unconstitutional." App. 88. Indeed, the district court said, "it would be inappropriate to limit relief to the named Plaintiffs in this case." App. 88.

## ARGUMENT

This Court may issue a stay pending appeal. Fed. R. App. P. 8(a)(2). In analyzing a stay request, the Court considers: (1) whether the applicant has shown a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). Because each factor favors Defendants, this Court should stay the district court's injunction pending appeal.

The district court erred in enjoining Florida's in-office lobbying restriction. It erred on the merits as we will explain in our opening appellate brief. But we do not seek a stay pending appeal of the injunction as it applies to the two named plaintiffs who the district court determined were entitled to injunctive relief. We do seek a stay to the extent the district court enjoined the statute more broadly—prohibiting Defendants from enforcing the in-office restriction against anyone, anywhere. App. 88–89. The

Supreme Court has recognized the appropriateness of granting such a limited stay. *See U.S. Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) (granting the application of the U.S. Solicitor General for a stay pending appeal of a district court order to the extent it "grant[ed] relief to persons other than" the plaintiff who was challenging the constitutionality of a federal statute under which he had been discharged from the military).

### A. Defendants are likely to succeed in narrowing the scope of the injunction.

Defendants are likely to succeed on appeal in narrowing the scope of the district court's preliminary injunction to those two named plaintiffs. That is so for two reasons. District courts lack the power to issue universal injunctions beyond the parties before the courts. And even if they had such power in some cases, this would not be one of the "rare" cases in which one should be issued. *Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) (opinion of Grant, J., joined by Anderson, J.) (citation omitted).

### 1. *The district court lacked the power to issue a universal injunction.*

The equitable power of district courts generally does not include issuing universal injunctions. "If district courts have any authority to issue universal injunctions, that authority must come from a statute or the Constitution." *Trump v. Hawaii*, 138 S. Ct.

2392, 2425 (2018) (Thomas, J., concurring).[2] "No statute," however, "expressly grants district courts the power to issue universal injunctions." *Id.* "So the only possible bases are a generic statute that authorizes equitable relief or the courts' inherent constitutional authority." *Id.* And whether either of these sources accords the district courts authority to issue universal injunctions, in turn, depends on whether the relief in question "was traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999); *see also Trump*, 138 S. Ct. at 2425–26 (Thomas, J., concurring).

**1.** What then "is the traditional scope of injunctive relief?" *Georgia*, 46 F.4th at 1303. It is relief "limited in scope to the extent necessary to protect the interests of the parties." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003) (citing cases); *accord McKusick v. City of Melbourne*, 96 F.3d 478, 484 n.5 (11th Cir. 1996) (collecting "substantial case law to the effect that a court lacks equitable power to issue an injunction that binds the world at large"); *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("The fundamental problem with this injunction is that plaintiffs lack standing to seek—and the district court therefore lacks authority to grant—relief that benefits third parties."); *Zepeda v. U.S. Immig. & Naturalization Serv.*, 753 F.2d 719, 727

---

[2] For example, in the Administrative Procedure Act, Congress authorized an agency-specific remedy—vacatur—which benefits the world at large, not just a specific plaintiff, by operating on an unlawful rule. 5 U.S.C. § 706(2).

(9th Cir. 1983) (a district court "may not attempt to determine the rights of persons not before the court"). In that way, equitable remedies are nothing special; they, like all remedies, are limited to those "sufficient to redress" a party's "injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010) (holding a nationwide injunction inappropriate on this basis).

Consider English equitable practice on this point. "In 1789, as a general rule, the English Court of Chancery granted injunctions for one overarching purpose: to prevent violations of the moving party's rights." *Rodgers v. Bryant*, 942 F.3d 451, 460–61 (8th Cir. 2019) (Stras, J., concurring in part, dissenting in part) (citing several treatises). "To that end," in traditional equity practice, "injunctions were 'directed only to the parties.'" *Id.* (quoting 2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 875, at 166 (1836)); *accord CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 258 (4th Cir. 2020) ("The thought that an injunction could extend to protect scores of non-parties was not contemplated; indeed, it was resolutely avoided."), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020), *appeal dismissed*, Order No. 19-2222 (Mar. 11, 2021).

Equity courts thus followed a "party-centered understanding of injunctions." *Rodgers*, 942 F.3d at 461 (Stras, J., concurring in part, dissenting in part). That is "reflected in equity's requirement 'that all persons materially interested, either legally, or beneficially, in the subject-matter of a suit, are to be made parties to it, . . . however numerous they may be.'" *Id.* (quoting Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof, According to the Practice of the Courts of Equity, of England and America*

7

§ 72, at 74 (4th ed. 1848)). In other words, the equitable rule that "each party could only get an injunction (or other relief) to protect its own rights" was so ingrained that English chancery courts "insist[ed] that the plaintiffs join everyone with an interest in the litigation." *Id.*

Occasionally, an injunction issued to a party by an equitable court would have an effect beyond the party. But in those cases, the "benefit was merely incidental." *Trump*, 138 S. Ct. at 2427 (Thomas, J., concurring). "Injunctions barring public nuisances were an example[:] While these injunctions benefited third parties, that benefit was merely a consequence of providing relief to the plaintiff." *Id.*[3]

All that English practice did not change in America. "American courts of equity did not provide relief beyond the parties to the case." *Id.* For example, in *Scott v. Donald*, the plaintiff sued South Carolina arguing that the State had unconstitutionally confiscated his alcohol. 165 U.S. 58, 59, 78–86 (1897). The Supreme Court agreed that the South Carolina statute authorizing the confiscation was unconstitutional. *Id.* at 99–101. But the Court in a separate opinion rejected the plaintiff's request for an injunction protecting everyone else subject to the statute. *See Scott v. Donald*, 165 U.S. 107, 117 (1897). It explained:

---

[3] This same rule would permit broad injunctions today. Those injunctions, however, would not be universal in the relevant sense. The hallmark of a universal injunction is that it extends beyond the plaintiff. When a plaintiff requires broad relief to get complete redress, the injunction can rightly be broad, but it is still party-specific.

But while we think that the complainant was entitled to an injunction against those defendants who had despoiled him of his property, and who were threatening to continue so to do, we are unable to wholly approve the decree entered in this case.

The theory of the decree is that the plaintiff is one of a class of persons whose rights are infringed and threatened, and that he so represents such class that he may pray an injunction on behalf of all persons that constitute it. It is, indeed, possible that there may be others in like case with the plaintiff, and that such persons may be numerous, but such a state of facts is too conjectural to furnish a safe basis upon which a court of equity ought to grant an injunction.

*Id.* at 115. *Scott* was not alone in that view. The Supreme Court "has long respected these traditional limits on equity and judicial power." *Trump*, 138 S. Ct. at 2428 (Thomas, J., concurring).

**2.** There was one exception to the general rule that equitable courts lacked the power to bind non-parties: cases where "plaintiffs were suing on behalf of others." *Rodgers*, 942 F.3d at 462 (Stras, J., concurring in part, dissenting in part). Those types of "[r]epresentative suits arose out of the equitable practice of using a single case to resolve issues that would have otherwise resulted in a 'multiplicity' of individual lawsuits." *Id.* The equitable procedure to deal with that problem was usually referred to as the bill of peace, the modern analogue of which is the Rule 23 class action. *Id.* at 463.

The district court's universal injunction, however, can claim no comfort in this history. The court did not limit relief to the injured parties and did not certify a class action. Instead, the injunction applies to every public officer—from the part-time local

water board member all the way up to the Speaker of the Florida House and President of the Senate.

**3.** This district court did not grapple with any of the historical limits on its equity power. Instead, it took the view that once a court concludes that a law is "facially unconstitutional," application of the judicial power must mean that the law ceases to apply in all circumstances. App. 88. And Plaintiffs mimicked that view in opposing a stay, arguing that under overbreadth cases like *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), a finding of overbreadth necessitates an injunction barring enforcement "in any manner." App. 103–04.

That is a "flawed notion"; even when a district court concludes that a law is unconstitutional, it does not "eliminate[] the legal effect of the statute in all contexts." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020). Instead, the power of judicial review "permits a court to decline to enforce a statute in a particular case or controversy." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018) (footnote omitted). But even then, the statute "continues to exist" and "remains a law until it is repealed by the legislature." *Id.*

Nor did the district court appreciate the nature of facial-overbreadth challenges. The overbreadth doctrine permits a plaintiff to raise a facial challenge by arguing that a statute "prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). Overbreadth is thus an exception to the traditional rule that "a person to whom a statute may constitutionally be applied may not challenge that

statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *L.A. Police Dept. v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (quotations omitted).

But the overbreadth doctrine expands only the range of substantive arguments that a plaintiff can raise on the merits; it says nothing about the type of relief that a successful plaintiff may enjoy. *See* Henry P. Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 4 (1982) ("[O]verbreadth is simply a disposition on the merits of the litigants' First Amendment claim."). That much is clear from *United States v. National Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995). In that case, the Supreme Court concluded that the federal statute banning government employees from receiving honoraria "violate[d] the First Amendment" because it was substantially overbroad as applied to "employees below grade GS-16." *Id.* at 472, 477. Nonetheless, the Court "held that an injunction preventing" the "enforcement of [that] overbroad statute 'should be limited to the parties before the Court.'" *Hedges v. Obama*, 12-cv-331, 2012 WL 2044565, at *2 (S.D.N.Y. June 6, 2012) (quoting *NTEU*, 513 U.S. at 477–78). As the Supreme Court explained—even after holding that the federal statute was unlawful—"we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *NTEU*, 513 U.S at 478. *National Treasury Employees Union* thus makes explicit what centuries of historical practice confirms—even in the face of an unlawfully overbroad statute, equitable remedies are limited to the parties.

11

Indeed, the Supreme Court has repeatedly ordered party-specific relief even after finding an overbreadth claim successful. Consider, for example, *Cohen v. California*, 403 U.S. 15 (1971). There, a defendant was convicted of violating a California statute that made it unlawful to willfully disturb the peace. *Id.* at 16. He challenged his conviction. The Supreme Court recognized that some disturbing the peace statutes were constitutional. *Id.* at 21. But because the California statute swept too broadly, the Court found it facially unconstitutional. *Id.* at 26; *see also id.* at 23 n.5 (specifically referencing the overbreadth doctrine). Critically, however, the relief the Court ordered was not a universal injunction against enforcement of California's law; it was that Cohen's conviction was reversed. *Id.* at 26. So too in *Thornhill v. Alabama*, 310 U.S. 88 (1940). There the defendant was convicted of a loitering offense. *Id.* at 91–92. He asserted that the "sweeping regulations" he was convicted under swept too broadly. *Id.* at 96. Thus, the Supreme Court considered the statute's "fac[ial]" constitutionality. *Id.* at 96–97. And the Court found the statute wanting. *Id.* at 101. But like with *Cohen*, the result was not an injunction barring all enforcement of the Alabama statute; rather, it was that Mr. Thornhill walked free. *Id.* at 106. One more: In *United States v. Stevens,* the Supreme Court asked whether a statute prohibiting "commercial creation, sale, or possession of certain depictions of animal cruelty" was constitutional. 559 U.S. 460, 464 (2010). Relying on the overbreadth doctrine, the Court said no. *Id.* at 473, 481–82. But again, the relief was not a universal injunction; it was that Stevens' conviction was vacated. *Id.* at 482; *see also*

12

*United States v. Stevens*, 533 F.3d 218, 235 (3d Cir. 2008) (en banc) ("[W]e will vacate Robert Stevens' conviction.").

The limited nature of overbreadth relief follows not just from history, but from theory too. As a formal matter, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). Thus, when "a lower federal court pronounces a state statute void for overbreadth . . . the binding effect of the federal judgment extends no further than the parties to the lawsuit." Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 853–54 (1991) (footnotes omitted). That is, even when one district court pronounces a statute overbroad "the state remains free" to enforce "[a]gainst nonparties." *Id.* at 854; *see also id.* at 881 ("A lower federal court's declaration that a state statute is unenforceable because overbroad, however beneficial to the prevailing party, confers no protection on nonparties to the litigation."); *People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 834 (4th Cir. 2023) ("Because state courts and lower federal courts stand in a coordinate, not a hierarchical, relationship, the binding effect of the federal judgment extends no further than the parties to the lawsuit; against nonparties, civil and criminal actions can go forward.").

The district court erred by taking the opposite view.[4]

> 2.    *Even if the district court had the power to issue a universal injunction, it abused its discretion by issuing one here.*

Even if universal injunctions are sometimes proper, the district court was wrong to issue one here. At best, universal injunctions should be issued in "rare" cases. *Georgia*, 46 F.4th at 1304; *see also CASA de Maryland*, 971 F.3d at 259 ("Even *if* the federal trial courts somehow possessed the power to issue nationwide injunctions, the attendant practical consequences of this drastic and extraordinary remedy should restrict its use to the most exceptional circumstances." (emphasis in original)). "When considering requests to enjoin national rules and policies, courts must wrestle with whether it is possible to provide complete relief to the plaintiffs with an injunction limited in scope to the plaintiffs alone, or whether it is necessary to extend relief to nonparties as well." *Georgia*, 46 F.4th at 1304 (quotations omitted). The district court did none of that. It neither considered whether a narrower injunction could have given these plaintiffs

---

[4] In *Florida v. Department of Health & Human Services* (*HHS*), a motions panel of this Court concluded that "universal" injunctions may be issued in "rare" but "appropriate circumstances." 19 F.4th 1271, 1281–82 (11th Cir. 2021). Motions panel decisions, however, are not binding and so *HHS* offers no sound basis to uphold the scope of the injunction here. *See Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020) (per curiam) ("[T]he necessarily tentative and preliminary nature of a stay-panel opinion precludes the opinion from having an effect outside that case." (footnote omitted)); *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1280 n.1 (11th Cir. 2020) (citing *Democratic Executive Committee*, 950 F.3d at 795).

complete relief, nor asked whether it was "necessary" to extend the injunction to non-parties. And the answer to both questions makes clear that universal relief was unwarranted here.

Plaintiffs' alleged injuries could plainly be redressed by party-specific relief. The district court recognized that Plaintiffs' asserted injuries flowed from "enforcement" of the lobbying laws. App. 87. A party-specific injunction can remedy that harm. "[A]n injunction that bars action against the plaintiffs obligates a defendant to respect that injunction[.]" *Georgia*, 46 F.4th at 1306. Anything more would be "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Kentucky v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023) ("Because an injunction limited to the parties can adequately protect the plaintiffs' interests while the case is pending disposition on the merits, the district court abused its discretion in extending the preliminary injunction's protection to non-part[ies].").

The district court suggested that a broader injunction was necessary to protect non-parties. App. 76–77, 88. But "[r]eviewing courts should . . . be skeptical of nationwide injunctions premised on the need to protect nonparties." *Georgia*, 46 F.4th at 1306. The Federal Rules permit many "procedural devices," which "allow nonparties with similar interests to seek the protection of injunctive relief—class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own." *Id.* Plaintiffs availed themselves of none of those devices here. "A district court cannot circumvent these mechanisms in the name of providing

15

injunctive relief only for nonparties' benefit." *Id.* Because the district court did just that, the Court should narrow the injunction.

### B.    The remaining stay factors favor Defendants.

To begin with, Defendants will suffer irreparable harm without a stay. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration accepted) (citation omitted).

The "balance of harms" and the "public interest" both favor a stay as well. *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020). The harm to the State far outweighs any harm to Plaintiffs pending appeal. Indeed, the two plaintiffs who were determined to have standing will suffer no harm pending appeal at all because Defendants ask for a stay only as to non-parties and the two plaintiffs who lack standing—the plaintiffs with standing will remain protected by an injunction in any case. And the other two have failed to show any threat of harm from the in-office restriction. App. 74–76. As for the public interest, any other public officer who wants to challenge the lobbying restrictions has the tools to do so. *Georgia*, 46 F.4th at 1306–07. And the public interest is served by demanding that non-parties avail themselves of those tools: It "encourages multiple judges . . . to weigh in only after careful deliberation," whereas "universal injunctions tend to force judges into making rushed, high-stakes, low-information decisions." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring); *see also Feds for Med. Freedom v. Biden*, 25 F.4th 354, 360 (5th Cir. 2022) (Higginson, J., dissenting).

16

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should stay the injunction except as to the

two named plaintiffs that the district court found had established irreparable harm.


Dated: April 7, 2023                     Respectfully submitted,

                                         ASHLEY MOODY
                                         Attorney General

                                         */s/ Alison E. Preston*
                                         HENRY WHITAKER
                                           *Solicitor General*
                                         DANIEL BELL
                                           *Chief Deputy Solicitor General*
                                         EVAN EZRAY
                                           *Deputy Solicitor General*
                                         ALISON E. PRESTON
                                           *Assistant Solicitor General*
                                         Office of the Attorney General
                                         PL-01, The Capitol
                                         Tallahassee, FL 32399-1050
                                         (850) 414-3681
                                         (850) 410-2672 (fax)
                                         *alison.preston@myfloridalegal.com*
                                         *henry.whitaker@myfloridalegal.com*
                                         *daniel.bell@myfloridalegal.com*
                                         *evan.ezray@myfloridalegal.com*

                                         *Counsel for Appellants*

17

## **CERTIFICATE OF COMPLIANCE**

1.      This document complies with Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4293 words.

2.      This document complies with the typeface and type-style requirements of Fed. R. App. P 27, Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/  Alison E. Preston*
Assistant Solicitor General

## **CERTIFICATE OF SERVICE**

I certify that on April 7, 2023, I electronically filed this Motion for Stay Pending Appeal with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Alison E. Preston*
Assistant Solicitor General